IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MALACHI MORGAN THOMAS,<br><br>*Defendant*. | Case No. 1:25-CR-327<br><br>Hon. Michael S. Nachmanoff<br><br>Sentencing: September 24, 2026 |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

For seven months, defendant Malachi Morgan Thomas terrorized dozens of young girls across the United States in pursuit of his own sexual gratification and his desire to wield power and control over his victims. Operating under the guise of a cybercriminal organization, the defendant enticed and extorted more than 40 minor girls to create sexually explicit images and videos of themselves, or else face retribution from the "organization." The defendant demanded the victims swear loyalty to him or risk their physical safety and the safety of their family members. In some cases, the defendant threatened the child victims with rape if they did not comply. And in one case, after the victim told him she could not call him, the defendant sent the victim a video of a woman being drowned to death in a bathtub.

The defendant carried his online threats and extortion one step further, meeting and attempting to meet several of his victims in person for sex. In June 2020, the defendant flew to another state where he had sex multiple times with MV2 (then 15) and recorded her engaged in sex acts. On July 1, 2020, the defendant ordered a 17-year-old girl to meet him in person at a mall in Fairfax County, where he forced her to perform oral sex on him and recorded it on his

cell phone. A few days later, he attempted to meet another victim at a mall in Prince William County, though he encountered the victim's father instead, and had his phone seized by police who were called to investigate what turned into a physical altercation between the defendant and the victim's father. Utterly undeterred by this, and the fact that the police now had his phone in custody, a week later the defendant ordered another girl (then 16) to meet him outside her house in Fairfax County in the middle of the night. The defendant, clad in a black ski mask, raped this victim and recorded it on another of his cell phones.

Incredibly, while the defendant was committing these horrific crimes, he was also on state probation in Prince William County for making online threats and receiving child pornography related to a separate victim. And just one week after he raped a 16-year-old girl in Fairfax County, the defendant completed his court-ordered sex offender treatment for the Prince William County case. Despite his arrest by multiple police departments, and his incarceration pending trial in state court, the defendant continued to victimize girls. While at the Fairfax County Adult Detention Center, he used a jail-issued communication device to entice MV4 (then 15) to send him sexually explicit photos of herself.

For his rape and forcible sodomy of the two minor victims in Fairfax County, and his online solicitation of his victim in Prince William County, the defendant was sentenced to an active term of imprisonment of 30 years. Until now, the defendant has not, however, been held accountable for the over 40 young girls who he threatened, coerced, and sexually exploited online and, in the case of MV2, in person. For the reasons below, the United States recommends the Court impose a sentence of 40 years in prison, to run consecutive to the defendant's state sentences, which is sufficient but not greater than necessary to reflect the

totality of the defendant's conduct and comport with the purposes of sentencing set forth in 18 U.S.C. § 3553.

## BACKGROUND

### I. Factual Background

The factual background of this case is set forth in detail in the PSR and Statement of Facts and is incorporated herein by reference. *See* Dkt. 24 (Presentence Report ("PSR")) ¶¶ 20-88. As such, the facts and procedural history are summarized here only in relevant part.

#### A. The defendant sexually assaults and extorts his high school classmates.

The defendant has been threatening, harassing, and exploiting young girls since as early as 2016 when he was in 9th grade. In December 2016, a fellow student reported that the defendant had made inappropriate sexual comments to her and had grabbed her left breast during history class. *See* Exhibit 1 (under seal).

In March 2018, Prince William County Police received a report that the defendant had extorted a fellow high school student. *See* Exhibit 2 (under seal). Law enforcement interviewed the victim, who disclosed that she had sent a photo of her face and breasts to the defendant. Later on, the victim heard from people at school that the defendant was showing the picture to other students. The victim reported to Snapchat that the defendant told her "if I don't do what he tells me to he will expose me and black male me."

#### B. The defendant hacks and takes control of minor girls' Snapchat accounts.

In November 2018, three high school girls reported to police that they had been contacted on Snapchat by a person who called himself "Ceasar" (later identified as the defendant) threatening to hack their accounts. *See* Exhibit 3 (under seal). The girls reported that Ceasar messaged them in a group chat, telling them that they could join him or have their Snapchat

accounts hacked. Ceasar sent a video of one of the girl's ("HSG 1") exposed breasts. Ceasar took over HSG 1's Snapchat account and began sending messages to other girls, pretending to be her. As with the first three girls, he demanded they join him or risk having their accounts hacked. With one girl ("HSG 2"), Ceasar told her that that he had her personal information, including information about her upcoming soccer tournament, and that he had seen her at a local mall.

Subsequently, the defendant, still pretending to be a high school girl, sent a message to "HSG 3" with a link to update her Snapchat security feature. After clicking the link and entering her information, HSG 3 was no longer able to access her account. The defendant then sent a text message to HSG 3, ordering her to give him the password to her My Eyes Only folder on Snapchat, otherwise he would expose her.

In December 2018, another high school girl ("HSG 4") reported to law enforcement that she had been threatened online. *See* Exhibit 4 (under seal). HSG 4 disclosed that she had received a message on Snapchat from a user (later identified as the defendant) threatening that if she did not send a nude picture of herself, he would hack her account and disseminate her saved images. HSG 4 told police that she sent the defendant a picture of her naked breasts.

Another high school girl ("HSG 5") reported to Prince William County Police that she had received a nude photo from her friend's Snapchat account, which, unbeknownst to HSG 5, had been hacked and taken over by the defendant. *See* Exhibit 5 (under seal). In response, HSG 5 sent a nude photo of herself. After receiving HSG 5's nude photo, the defendant responded that the account had been taken over by "The Dark Unity," which "[had] already hacked 8 accounts." The defendant told HSG 5, "We own you" and "They are going to kill you now" in an attempt to solicit additional nude photographs.

During Prince William County's investigation of the defendant, they received reports from numerous victims harmed by the defendant according to his well-tested and successful formula: hacking an account, assuming the victim's identity, obtaining nude photos, and extorting the victim for additional nude pictures. *See* Exhibit 6 (under seal).

The defendant was ultimately charged in Prince William County Juvenile and Domestic Relations Court with three counts of computer harassment and one count of reproduction and transmission of child pornography related to his crimes against HSG 5. *See* Exhibit 7 (under seal). He was interviewed by law enforcement and admitted to some of the conduct, including that he hacked HSG 4's Snapchat account, though he claimed he did so because HSG 4 was bullying another student. He also admitted that he hacked HSG 1's Snapchat account, though here he claimed he did so at the request of HSG 1's ex-boyfriend, who he described as a "white male with curly brown hair" named Ethan.

In February 2019, the defendant pleaded guilty to the charges and was placed on indefinite probation pending final adjudication. PSR ¶ 205. Among other conditions, the defendant was ordered to undergo a mental health assessment and complete sex offender treatment. *Id.*

**C. While on juvenile probation, the defendant threatens and coerces a 14-year-old girl to have sex with him.**

In January 2020, a 14-year-old girl ("PWC VICTIM 1") in Prince William County reported to law enforcement that she had received threatening messages on Snapchat from an individual (determined to be the defendant) who she later met in person for sex. *See* Exhibit 8 (under seal). PWC VICTIM 1 disclosed that she had was added to a Snapchat group called "Female Guard" and began chatting with a user she thought was a girl, but later realized was a male (i.e., the defendant) who went by the name "Stannis." The defendant asked for pictures of

her breasts, which she initially refused, though later relented when the defendant threatened PWC VICTIM 1's family. The defendant then began pressuring PWC VICTIM 1 to meet in person. In the fall of 2019, PWC VICTIM 1 met the defendant in person twice. The first time, they met at a movie theater and the defendant pressed PWC VICTIM 1 to perform oral sex on him, though she declined. The defendant threatened PWC VICTIM 1's family, so she met him a second time and agreed to perform oral sex on him. Afterward, the defendant had vaginal sex with PWC VICTIM 1. They met several more times afterward, but the meetings stopped at the end of November 2019 when the defendant told PWC VICTIM 1 he had found a new girl.

A review of their Snapchat messages revealed graphic, threatening messages the defendant sent to PWC VICTIM 1 to gain her compliance with his demands. For example, the defendant sent PWC VICTIM 1 multiple pictures and videos of women being beaten, killed and raped. PWC VICTIM 1 appeared in a group chat with the defendant, where he appeared to enjoy scaring the girls in the group chat by using their personal information to threaten them. When the girls made him angry, the defendant would post on the group chat the girls' addresses and where they went to school as a threat. The defendant appeared also to have multiple Snapchat accounts to trick the girls and pit PWC VICTIM 1 against the other girls in the group chat. The defendant would order the girls to bully each other over social media until they begged him for forgiveness. On multiple occasions, PWC VICTIM 1 begged the defendant to spare her life because she believed he would send people to kill her and her family. The defendant told PWC VICTIM 1 things like, "Due to your treason and betrayal I'm going to have you put down along with your siblings" and "Don't worry [PWC VICTIM 1] no one will harm you […] But your family on the other hand."

In January 2020, the defendant demanded PWC VICTIM 1 sell marijuana and give him the money. PWC VICTIM 1 said she did not have the money, and the defendant stated, "I'm going to make all of you slaughtered like dogs," "I want your parents to see what I have," and "Along with your older siblings too since you fucked with me." He also wrote "Alright I tried to give you a second fucking chance but now you've pushed me to make me do this to children and non combatants" and "we can take this a lot further I'm not fond on hurting children unless needed." PWC VICTIM 1 said was afraid the defendant was enroute to her house to kill her family, so she finally disclosed to them what was happening to her.

**D. The defendant solicits a minor girl for nude photos and attempts to meet her for sex.**

In June 2020, a 16-year-old girl ("PWC VICTIM 2") received a text message from a friend telling her to add the user "Great Kublai Khan" (i.e., the defendant) on Snapchat. PSR ¶ 206; *see also* Exhibit 23 (under seal). After PWC VICTIM 2 added the defendant's account, he sent her a message saying he was part of an organization that does a lot of hacking and as long as she did not block or remove him, she would be safe. He told her that she should speak to her friend about what happens to people who go against him. The defendant said he had people within a couple of miles of her house and he would send them there.

On July 7, 2020, the defendant asked PWC VICTIM 2 to send photos of her breasts and buttocks. Then he told her he wanted to see her genitals and she should insert a brush in her vagina. PWC VICTIM 2 sent the defendant a video of herself masturbating and exposing her genitals.

On July 9, 2020, the defendant told PWC VICTIM 2 to meet him at a local shopping mall. PWC VICTIM 2 was afraid the defendant would harm her family and decided to tell her father about the messages. PWC VICTIM 2's father took over her messages with the defendant and, communicating as his daughter, made arrangements to meet the defendant at a particular store. At

the mall, PWC VICTIM 2's father confronted the defendant and detained him until police responded. Prince William County Police responded to the scene and took the defendant's Samsung cell phone, though they did not arrest him at that time.

**E. The defendant rapes and forcibly sodomizes two minor girls in Fairfax County.**

On July 20, 2020, just a few days after the mall incident, a 16-year-old girl ("FFX VICTIM 1") reported a sexual assault by an unidentified male (later identified as the defendant) to the Fairfax County Police Department ("FCPD"). *See* Exhibit 9 (under seal). FCPD interviewed FFX VICTIM 1, who disclosed that on July 17, 2020, she was added to a Snapchat group chat by a girl she knew from school ("FFX VICTIM 2"). The group chat had 3 participants, FFX VICTIM 1, FFX VICTIM 2, and a user with display name "Great Kublai Khan" (i.e., the defendant). In a Snapchat message, the defendant told FFX VICTIM 1 the following:

> I'm surprised you don't know me so I will tell you what I told your friend [FFX VICTIM 2] has know me for a month or so and she also understands what I'm capable but I'll explain since you don't understand or know who I am I'm known as Kublai Khan I lead an organization called known as the "Khanate" we do a lot of hacking advanced programming illegal operations not only just online but physical actions as well for example this acccount I'm using was hacked by me along with a lot of other accounts the girls I normally go after are disrespectful and full of themselves like you also I'm a guy not a chick do you understand? And as long as you don't block or remove this account you'll be safe.

Shortly after, the defendant told FFX VICTIM 1 to send him two photos of herself and said, "I'm going to add you to a group chat with the others you're being added for your safety I use my OS for testing my crash codes by suppressing tool on Parrot Security 4.1 so I recommend that you stay there so you won't have to buy a replacement device[.]" The group chat was called "Female Guard." FFX VICTIM 1 said there were 27 other girls in the group chat, some as young

as 12 or 13 years old. FFX VICTIM 1 described that the group chat was cult-like, and the girls would call the defendant their king and ask him for permission to speak.

The defendant also communicated with FFX VICTIM 1 in direct messages. On July 18, 2020, the defendant told FFX VICTIM 1, "I have a task for you tomorrow" and then informed her she would "meet someone not for any 'illegal' activities." Later, the defendant told FFX VICTIM 1 he would have "one of [his] members tell you when they meet yo [sic]." The defendant told FFX VICTIM 1 she would "do as I ask" and "I don't wish to be aggressive or brutal with you unless you force me to." FFX VICTIM 1 asked the defendant, "what are me and your friend gonna do[?]" He responded, "You'll do whatever he asks of you." FFX VICTIM 1 protested that she did not want to "suck dick" and "watch me kill myself[.]" The defendant told FFX VICTIM 1, "The other girl went against me so she had to be 'dealt' with brutally." On July 20, 2020, at approximately 12:26 a.m., FFX VICTIM 1 received a message from the defendant telling her, "hello this is the guy ur meeting".

On July 20, 2020, FFX VICTIM 1 met the defendant in Fairfax, Virginia at a location near FFX VICTIM 1's home. The defendant was wearing a black ski mask. He forced FFX VICTIM 1 into a clump of bushes, grabbed her hair, forced her onto her knees, and told FFX VICTIM 1 "get down bitch, we need to get this over with. The sooner you start complying the better." The defendant forced his penis into her mouth, forced his penis into her vagina without her consent, and recorded part of the assault on another of his cell phones (as his other cell phone had been seized by the police 11 days prior). After the assault, FFX VICTIM 1 returned home and encountered her neighbor sitting on his patio. FFX VICTIM 1 told the neighbor about the assault, and he contacted the police.

On August 27, 2020, FCPD interviewed FFX VICTIM 2, who FFX VICTIM 1 said had added her to the defendant's Snapchat group. *See* Exhibit 10 (under seal). FFX VICTIM 2 disclosed that she was sexually assaulted in July 2020 by an unknown man (later determined to be the defendant). She said that on July 1, 2020, she received a message on Snapchat from a user who identified himself as "Stannis" and told FFX VICTIM 2 that she could either surrender herself to him and become loyal, or he would kill her and her family. Stannis (i.e., the defendant) added FFX VICTIM 2 to a group chat called "Female Guard 1." FFX VICTIM 2 disclosed that she was very afraid and thought she might be killed. Stannis demanded pictures of her breasts and vagina, and if she refused Stannis threatened to kill her.

FFX VICTIM 2 disclosed that on at least two occasions in July 2020, Stannis demanded that FFX VICTIM 2 meet with a "member of his organization" at a local mall. FFX VICTIM 2 complied and, on both occasions, she met a man (i.e., the defendant) at the mall who called himself Jeremiah. He forced FFX VICTIM 2 to perform oral sex on him and recorded it on his cell phone. FFX VICTIM 2 felt that she had to do this otherwise she would be killed. She disclosed she felt disgusted with herself and felt like crying and breaking down.

**F. The defendant devises a scheme to coerce minor girls on Snapchat to create child sexual abuse material.**

Between at least March 1, 2020, and October 1, 2020, the defendant used HSG 3's Snapchat account (hereinafter, "DEF-ACCOUNT") to coerce approximately 41 minor girls between the ages of 12 and 17 to engage in sexually explicit conduct. On certain occasions, the defendant directed the girls to take and send him sexually explicit photos and videos of themselves, or participate in live transmissions via video calls and engage in sexually explicit conduct.

To meet the girls, the defendant formed Snapchat group chats, which he titled, for example, “Great Kublai Khan” and “Female Guard” (the same group he used to victimize PWC VICTIM 1). The defendant would connect with a girl and then direct that girl to invite her friends to the group chat, at which point the defendant would offer the opportunity for the first girl to be “released.” Once the defendant connected with the new girls in the group chat, he would send them a direct message explaining who he was. In the group chats and direct messages, the defendant identified himself with an alias, often King Stannis, Kublai Khan, and Renly, and claimed he led a criminal organization. He told the girls that as long as they did what he told them, they would be safe. *See* Exhibit 11 (under seal).

For example, on May 14, 2020, the defendant sent the following Snapchat messages to MV3:[1]

[1] The user identified as “ME” is the defendant, Malachi Thomas.

**ME**
Do you know who I am?
May 13, 2020 11:58:22 PM (UTC)

[redacted]
no
May 14, 2020 12:19:58 AM (UTC)

**ME**
Alright I'll explain since you don't understand or know who I am I'm known as King Stannis I lead an organization called the NDF we do a lot of hacking and advanced programming for example this acccount I'm using was hacked by me along with a lot of other accounts also I'm a guy not a chick do you understand? And as long as you don't block or remove this account you'll be safe.
May 14, 2020 12:22:04 AM (UTC)

If you understand everything I've told you say "Yes I understand"
May 14, 2020 12:22:16 AM (UTC)

[redacted]
yes i understand
May 14, 2020 12:24:18 AM (UTC)

**ME**
Very good
May 14, 2020 12:25:23 AM (UTC)

**ME**
Alright now moving on there's only one more thing I need you to agree to swear your loyalty and obedience to me your safety will be complete and I'll protect you there are other people with skills either like mine or a little different who are a lot worse than I am
May 14, 2020 12:25:43 AM (UTC)

**ME**
Do you agree? Yes or no.
May 14, 2020 12:25:50 AM (UTC)

[redacted]
i'm confused
May 14, 2020 12:26:37 AM (UTC)

**ME**
You're swearing your loyalty and obedience to me.
May 14, 2020 12:26:48 AM (UTC)

The following day, the defendant directed MV3 to create a group chat with two of her friends and add him to it.

> **ME**
> I need you to make a group chat with two of your friends and add me to it
> May 15, 2020 02:10:47 AM (UTC)

> [redacted]
> okay
> May 15, 2020 02:10:54 AM (UTC)

> **ME**
> I won't harm them.
> May 15, 2020 02:11:11 AM (UTC)

On June 9, 2020, the defendant sent the following message to MV13:

> Okay [redacted] I'm going to add you to a group chat with the others you're being added for your safety I use my OS for testing my crash codes by suppressing tool on Parrot Security 4.1 so I recommend that you stay there so you won't have to buy a replacement device
> June 09, 2020 10:05:43 PM (UTC)

To get the girls to do what he wanted – create and send him sexually explicit visual depictions – the defendant threatened to hack the girls' accounts and physically harm them and their family members if they disobeyed him. For example, on June 27, 2020, the defendant told a 13-year-old girl (hereinafter, "MG1") that she needed to "agree to swear your loyalty and obedience to me your safety will be complete and I'll protect you there are other people with skills either like mine or a little different who are a lot worse than I am[.]" When MG1 told the defendant to stop, he told her

- "I've had to kill two girls that resided in ashville"
- "I also let a man rape a woman there also for disobeying me."
- "So tell me what should I do to you?"

The defendant demanded MG1 send him pictures. When MG1 said no, the defendant told her "I'm going to make sure I record your naked body for all of your friends to see." MG1 repeatedly asked the defendant to stop. The defendant told her:

- "Send me the pictures and do everything I ask and you will be safe."
- "No I'm just going to strangle you to death."
- "Send what I asked for and you will be given another chance and your family will be safe"

Later, the defendant told MG1 what she should say in the group chat. He told MG1, "Your life is in my hands." When MG1 asked to leave the group chat, the defendant asked her, "Do you love your family?" "Ask me to leave again and I'm going to involve your family too." On July 1, 2020, the defendant exchanged the following messages with MG1:

| | |
|---|---|
| **DEF-ACCOUNT** | [MG1] I want you to do something for me. |
| **MG1** | okay |
| **MG1** | please don't make me send anything |
| **MG1** | I've never done that and never want to |
| **DEF-ACCOUNT** | I'm not really giving you a choice. |
| **MG1** | please i'm fr |
| **MG1** | i don't feel comfortable |
| **DEF-ACCOUNT** | I just want to see your tits with a bra on. |
| **MG1** | no please really i can't |
| **DEF-ACCOUNT** | I'm about to lose my temper and you don't want that to happen. |
| **DEF-ACCOUNT** | Now show me. |
| **MG1** | :( |
| **DEF-ACCOUNT** | Hurry up you have one minute |
| **MG1** | okay:/ |
| **DEF-ACCOUNT** | It's been a minute |
| **MG1** | there |
| **DEF-ACCOUNT** | Don't use the mirror |
| **DEF-ACCOUNT** | Do the other side of your camera |
| **DEF-ACCOUNT** | Good girl pull it down more for daddy. |
| **MG1** | you said to do it and i sent two |
| **MG1** | please |
| **MG1** | i really can't do that |

| | |
|---|---|
| **DEF-ACCOUNT** | Now |
| **MG1** | i want to get into a good college |
| **DEF-ACCOUNT** | I'm not going to fucking tell you again. |
| **MG1** | and i don't want them to look bad and see |
| **DEF-ACCOUNT** | I won't screenshot. |
| **DEF-ACCOUNT** | Now show me. |
| **MG1** | i fr can't anyrhing but that |
| **MG1** | literally that and my ass only things i'll show |
| **MG1** | not showin my bare boobs |
| **DEF-ACCOUNT** | You're going to show your tits. |
| **DEF-ACCOUNT** | I fucking warned you. |
| **MG1** | i literally cant |
| **MG1** | i really can't |
| **DEF-ACCOUNT** | You have one minute. |
| **DEF-ACCOUNT** | Fine I won't be mean to you. |
| **MG1** | i'm so sory |
| **MG1** | i really can't do it i'm so insecure about myself and i make myself feel shitty if i even send what i sent |
| **DEF-ACCOUNT** | You have to send two more with the bra |
| **MG1** | okay |
| **MG1** | there |
| **DEF-ACCOUNT** | Pull it down more |
| **MG1** | i can't that's as far as it goes i can't do anymore |
| **DEF-ACCOUNT** | This is the last one |
| **MG1** | i cant i feel so shitty about myself rn |
| **DEF-ACCOUNT** | You'll be fine you're making your king proud |
| **MG1** | i really won't my depression has gotten worse over the past week and i'm tryin to make it better but this isn't helpin i'm so sorry |
| **MG1** | really |
| **MG1** | but i cant |
| **MG1** | i'm sorry |
| **MG1** | okay |
| **DEF-ACCOUNT** | Say that you're fifteen in the group and you're sorry for lying |
| **MG1** | okay... |
| **DEF-ACCOUNT** | Are you a virgin? |
| **MG1** | yes... |
| **DEF-ACCOUNT** | I'm going to take it |

In a Snapchat message to MV13 (shown below), the defendant threatened to "pick up ur baby sister by the skull and smash her head into the wall while ur crying and screaming" and then

he said he would rip her clothes off, take off his pants and underwear, and have her "suck [his] cock" or else he would shoot her in the head and "finish off ur sister."



The defendant often told the girls that he would be administering a "gynecology exam" and they needed to spread their vaginal area open so he could inspect their genitals via images or live transmission over a video call. He also frequently sent the girls obscene images of females' genitals, including visual depictions of other victims, and told the girls to "do that for me" and demanded they create a similar image and share it with the defendant. The defendant would sometimes screenshot or screen record the images and videos that he ordered the girls to produce, though he typically did so in a way that would avoid triggering a notification to the other Snapchat user.

As a general matter, the defendant was aware that several of his victims suffered from anxiety, depression, and other mental health issues. Several of the victims listed in the indictment informed the defendant that they engaged in self-harming behaviors such as cutting as a result of their mental health issues. The defendant was also aware that several of his victims listed in the indictment had previously been victims of sexual abuse. In at least one instance with a victim listed in the indictment, the defendant knew that the victim was in foster care. These factors made his victims particularly susceptible to complying with his demands.

**MV1**

Between on or about March 25, 2020, and on or about September 10, 2020, the defendant sexually exploited MV1, who turned 15 in the summer of 2020. For example, on April 14, 2020, the defendant sent the following messages to MV1:

| | |
|---|---|
| **DEF-ACCOUNT** | [redacted] |
| **MV1** | Yeah |
| **DEF-ACCOUNT** | How was your day |
| **MV1** | Pretty good hbu |
| **DEF-ACCOUNT** | My day was a bit complicated but it was okay |
| **MV1** | Oh |
| **DEF-ACCOUNT** | I'm hard |
| **DEF-ACCOUNT** | Rub your tits for me |

| | |
|---|---|
| **MV1** | Hold on |
| **DEF-ACCOUNT** | Okay |
| **DEF-ACCOUNT** | Show daddy your pussy |
| **MV1** | Sorry I fell asleep |

On July 21, 2020, the defendant sent MV1 the following messages:

| | |
|---|---|
| **DEF-ACCOUNT** | I want some tits. |
| **DEF-ACCOUNT** | Put your face in it |
| **DEF-ACCOUNT** | Hurry up |
| **DEF-ACCOUNT** | Now send me an ass pic |
| **DEF-ACCOUNT** | Very sexy take off your panties bend over and show me |
| **DEF-ACCOUNT** | [redacted] |
| **MV1** | That's a hard angle to get |
| **DEF-ACCOUNT** | Very sexy now get a brush for me |
| **MV1** | Ok |
| **MV1** | Lemme find it |
| **DEF-ACCOUNT** | Taking so long. |
| **MV1** | I'm looking |
| **DEF-ACCOUNT** | Okay |
| **MV1** | All I can find is a comb |
| **MV1** | The bending over one? |
| **DEF-ACCOUNT** | Spread your ass too |
| **DEF-ACCOUNT** | Quickly |
| **DEF-ACCOUNT** | You made me cum |

On July 23, 2020, the defendant told MV1:

| | |
|---|---|
| **DEF-ACCOUNT** | Make a video sucking your brother's Dick |
| **MV1** | No |
| **DEF-ACCOUNT** | I'm not giving you a choice. |
| **MV1** | King i do anything you ask but I'm not doing that |
| **DEF-ACCOUNT** | I want that too. |
| **MV1** | Why |
| **DEF-ACCOUNT** | Because I told you to. |
| **MV1** | I'll do anything but that |
| **DEF-ACCOUNT** | Nah do it tonight. |

When she continued to say no, the defendant told MV1, "Better find the brush[.]" Then he sent the following messages:

| | |
|---|---|
| **DEF-ACCOUNT** | Take the ass pic bending over for me again |
| **DEF-ACCOUNT** | Spread your ass |
| **DEF-ACCOUNT** | Now get the brush suck on it like you're giving me head |
| **DEF-ACCOUNT** | Now show me your tits squeeze them together though |
| **DEF-ACCOUNT** | Put the brush in your pussy |
| **DEF-ACCOUNT** | Longer |
| **DEF-ACCOUNT** | Put the camera all the way down there |
| **DEF-ACCOUNT** | I came |
| **MV1** | Can I sleep now? |
| **DEF-ACCOUNT** | Yes fine |

On September 10, 2020, the defendant sent MV1 the following messages:

| | |
|---|---|
| **DEF-ACCOUNT** | [MV1] |
| **DEF-ACCOUNT** | Are you ready for your gynecology exam? |
| **MV1** | What |
| **DEF-ACCOUNT** | Your exam. |
| **MV1** | What exam |
| **DEF-ACCOUNT** | Yes for your gynecology exam I need you to spread your inner vaginal area open so I can check for infection or risk of infection |
| **MV1** | Uh no? |
| **DEF-ACCOUNT** | Uh yes. |
| **MV1** | Uh ok. |
| **DEF-ACCOUNT** | So show me since I'm your doctor |
| **MV1** | Can't rn |
| **DEF-ACCOUNT** | Why |
| **MV1** | I'm in class |
| **DEF-ACCOUNT** | You got lucky |

**MV2**

Between on or about April 9, 2020, and on or about July 9, 2020, the defendant sexually exploited MV2, who was 15 years old at the time. On June 6, 2020, the defendant told MV2, "I'm coming to see you." That same day, he flew from Richmond International Airport to another state's international airport to have sex with MV2.

On or about June 7, 2020, the defendant went to MV2's house during the night. He told MV2 "I'm outside my member just [left]."[2] MV2 left her house and met the defendant outside, where she performed oral sex on him. The defendant recorded MV2 performing oral sex and kept the video in his Snapchat account and on his Samsung cell phone. The defendant engaged in vaginal sex with MV2 during this trip, and later MV2 believed she might be pregnant.

On June 8, 2020, the defendant performed the following web searches on his Samsung cell phone:

- can a 18 year old date a 15 year old in [another state]
- age of consent by state
- sexual intercourse with minors (ASPE HHS.Gov)

**<u>MV3</u>**

Between on or about May 13, 2020, and on or about September 29, 2020, the defendant sexually exploited MV3, who was 15 years old at the time. For example, on May 14, 2020, the defendant sent the following messages to MV3:

| | |
|---|---|
| **DEF-ACCOUNT** | Do you have a bra on currently [MV3]? |
| **MV3** | yes |
| **DEF-ACCOUNT** | Very good |
| **DEF-ACCOUNT** | Show it to me |
| **DEF-ACCOUNT** | Wow you're very obedient |
| **DEF-ACCOUNT** | I'm impressed and proud |
| **DEF-ACCOUNT** | Hm pull it down lower for me |
| **DEF-ACCOUNT** | That's very sexy |
| **MV3** | 😊 |
| **DEF-ACCOUNT** | One more |
| **DEF-ACCOUNT** | But pull it down a bit more |
| **DEF-ACCOUNT** | Now take it off |

[2] The defendant frequently told the minor victims that he worked with other "members" in his criminal organization, including a person he called "Renly" whom the defendant said was his brother, but who was, in fact, the defendant.

On July 23, 2020, the defendant sent MV3 a picture of MV4 bent over at the waist with her buttocks and genitals exposed, then told MV3, "Do that for me[.]" Afterward, he sent the following messages:

| | |
|---|---|
| **DEF-ACCOUNT** | Do that for me |
| **MV3** | okay hold one im gonna do it in better lighting and get my tripod |
| **DEF-ACCOUNT** | Okay |
| **MV3** | i just tried and that's hard as hell 😂 |
| **DEF-ACCOUNT** | Just take an ass pic bending over for me |
| **MV3** | okay |
| **DEF-ACCOUNT** | Spread your ass too |
| **MV3** | you know i don't send pics of that |
| **DEF-ACCOUNT** | Well do it still |
| **MV3** | do you think zeus[3] would mind? |
| **DEF-ACCOUNT** | I doubt it |
| **MV3** | well i really like him and i don't wanna mess it up |
| **DEF-ACCOUNT** | It'll be fine |
| **MV3** | okay |
| **DEF-ACCOUNT** | Definitely going to fuck you from behind one day |

**MV4**

Between on or about July 3, 2020, and on or about September 29, 2020, the defendant sexually exploited MV4, who was 13 years old at the time. For example, on July 8, 2020, the defendant sent the following messages to MV4:

| | |
|---|---|
| **DEF-ACCOUNT** | [MV4] |
| **MV4** | Yes? |
| **DEF-ACCOUNT** | Show daddy your tits |
| **DEF-ACCOUNT** | Do pictures |
| **DEF-ACCOUNT** | Good girl more |
| **DEF-ACCOUNT** | Let daddy see your pussy |
| **DEF-ACCOUNT** | Rub it |
| **DEF-ACCOUNT** | Let me see your ass with your panties on |

[3] "Zeus," like Renly, is another of the defendant's aliases, whom he purported to be a member of his criminal organization, but who is, in fact, the defendant.

| | |
|---|---|
| **DEF-ACCOUNT** | More tits but stick your tongue out for me |
| **DEF-ACCOUNT** | More like that I'm going to cum |
| **DEF-ACCOUNT** | You made me cum |

On July 16, 2020, the defendant sent MV4 the following messages:

| | |
|---|---|
| **MV4** | Im sorry.... a lot of the other girls had bfs or gfs and I thought we were allowed |
| **DEF-ACCOUNT** | Show daddy something nice and I'll allow it |
| **DEF-ACCOUNT** | I'll consider allowing it |
| **DEF-ACCOUNT** | More |
| **DEF-ACCOUNT** | Keep going for daddy |
| **DEF-ACCOUNT** | [tongue out emoji] |
| **DEF-ACCOUNT** | More |
| **DEF-ACCOUNT** | Let daddy see your add |
| **DEF-ACCOUNT** | Ass* |
| **DEF-ACCOUNT** | Take it off and spread it for me |
| **DEF-ACCOUNT** | More tits |
| **DEF-ACCOUNT** | I can't wait to fuck you from behind |
| **DEF-ACCOUNT** | Do you have a brush m |
| **DEF-ACCOUNT** | ?* |
| **DEF-ACCOUNT** | Suck on it it for me like you're sucking my cock |
| **DEF-ACCOUNT** | Lick the tip too |
| **DEF-ACCOUNT** | Call me on here |
| **MV4** | Ok |
| **DEF-ACCOUNT** | Ride on it |
| **DEF-ACCOUNT** | Set up the camera on your bed so I can see your whole body |
| **DEF-ACCOUNT** | You're officially my one and only favorite. |

On September 7, 2020, the defendant sent MV4 a Snapchat message ordering her to call him. MV4 said she could not. Approximately 10 minutes later, the defendant sent her a video of a woman with her hands cuffed behind her legs, drowning to death in a bathtub.

**MV5**

Between on or about May 18, 2020, and on or about August 19, 2020, the defendant sexually exploited MV5, who was 12 years old at the time. For example, on July 30, 2020, the defendant sent the following messages to MV5:

| | |
|---|---|
| **DEF-ACCOUNT** | [MV5] |
| **MV5** | Urs. |
| **MV5** | Yes. |
| **DEF-ACCOUNT** | Take an ass pic for me |
| **MV5** | Kk |
| **DEF-ACCOUNT** | Take off the pants |
| **MV5** | Can I wait till like 4 because there's people here |
| **DEF-ACCOUNT** | No now. |
| **MV5** | Underwear off too? |
| **DEF-ACCOUNT** | Not yet |
| **MV5** | Kk |
| **DEF-ACCOUNT** | Let me see it from the back not the side. |
| **DEF-ACCOUNT** | Hurry up. |
| **DEF-ACCOUNT** | I'm taking your account. |
| **MV5** | Noo hold on |
| **DEF-ACCOUNT** | Hurry up. |
| **DEF-ACCOUNT** | Take off the panties |
| **MV5** | Ok |
| **DEF-ACCOUNT** | Show me. |
| **MV5** | Ok I'm cleaning so sorry if it takes long |
| **DEF-ACCOUNT** | Now. |
| **DEF-ACCOUNT** | Bend over and show me |
| **MV5** | Wdym |
| **DEF-ACCOUNT** | Bend down and show me your ass. |
| **MV5** | Ok |
| **DEF-ACCOUNT** | Let me see your pussy |
| **MV5** | But |
| **DEF-ACCOUNT** | Now. |
| **MV5** | Ok |
| **DEF-ACCOUNT** | Spread your legs |
| **DEF-ACCOUNT** | Rub it |
| **DEF-ACCOUNT** | More |
| **DEF-ACCOUNT** | Good girl |
| **MV5** | Anything else while I'm in my room |
| **MV5** | Sir? |
| **DEF-ACCOUNT** | No |
| **MV5** | Anything later so I'll know? |
| **DEF-ACCOUNT** | Maybe |
| **MV5** | Kk |

On August 2, 2020, the defendant exchanged the following messages with MV5:

| | |
|---|---|
| **MV5** | Do you need anything before I settle down |
| **DEF-ACCOUNT** | Yes |
| **MV5** | Like? |
| **DEF-ACCOUNT** | [*sends picture of MV4 bent over at the waist with her buttocks and genitals exposed to the camera*] |
| **DEF-ACCOUNT** | A picture like that |
| **MV5** | Um ok |
| **DEF-ACCOUNT** | Good girl |

**MV6**

Between on or about March 25, 2020, and on or about August 24, 2020, the defendant sexually exploited MV6, who was 15 years old at the time. For example, on July 24, 2020, the defendant sent the following messages to MV6:

| | |
|---|---|
| **DEF-ACCOUNT** | [MV6] |
| **MV6** | Yes |
| **DEF-ACCOUNT** | I want you to pleasure me since you've been gone |
| **MV6** | Been gone?? Where have I been |
| **DEF-ACCOUNT** | Not active |
| **DEF-ACCOUNT** | Now let daddy have some tits |
| **DEF-ACCOUNT** | More |
| **DEF-ACCOUNT** | Stick your tongue out in one for me |
| **DEF-ACCOUNT** | I wish you'd make me happy more often you have such a beautiful body |
| **MV6** | It's hard for me to take pictures now I cracked my front camera |
| **DEF-ACCOUNT** | I have to get you a new phone send some more using a mirror |
| **DEF-ACCOUNT** | Now without a bra |
| **DEF-ACCOUNT** | Very sexy |
| **DEF-ACCOUNT** | Now without the mirror I'm getting close |
| **DEF-ACCOUNT** | Take an ass pic bending over for me |
| **DEF-ACCOUNT** | So I can see your pussy too |
| **MV6** | So I take a pussy pic? |
| **DEF-ACCOUNT** | Yes with your ass pointing up |
| **MV6** | Okay imma send a pussy pic then that okay? |
| **DEF-ACCOUNT** | Yes |
| **DEF-ACCOUNT** | Very good |
| **MV6** | Its hard for me to get a pic like that with my mirror |
| **DEF-ACCOUNT** | I understand beautiful |
| **DEF-ACCOUNT** | Send me some of your old nudes |

**MV7**

Between on or about July 9, 2020, and on or about July 21, 2020, the defendant sexually exploited MV7, who was 14 years old at the time. For example, on July 9, 2020, the defendant sent the following messages to MV7:

| | |
|---|---|
| **DEF-ACCOUNT** | [MV7] |
| **MV7** | huh |
| **DEF-ACCOUNT** | Show daddy your tits |
| **DEF-ACCOUNT** | Good girl more |
| **DEF-ACCOUNT** | Put your face in it and stick your tongue out |
| **DEF-ACCOUNT** | Rub them |
| **DEF-ACCOUNT** | Let me see your pussy |
| **MV7** | ok. |
| **DEF-ACCOUNT** | You have such a nice body |
| **MV7** | thank you |
| **DEF-ACCOUNT** | You're welcome beautiful |
| **DEF-ACCOUNT** | Now more tits |
| **MV7** | wait why what's going on |

On July 21, 2020, the defendant sent the following messages to MV7:

| | |
|---|---|
| **DEF-ACCOUNT** | I want some tits from you too |
| **MV7** | okay i'm on it |
| **MV7** | but i'm in a hotel atm. |
| **MV7** | all i can do is saved ones until tomorrow i get home tomorrow |
| **DEF-ACCOUNT** | Live go to the bathroom. |
| **MV7** | my cousins in there. |
| **MV7** | i'll see if i can get him out |
| **DEF-ACCOUNT** | Okay. |
| **DEF-ACCOUNT** | More |
| **DEF-ACCOUNT** | More stick out your tongue too |
| **DEF-ACCOUNT** | Rub your pussy for me with your tits out |
| **MV7** | okay |
| **DEF-ACCOUNT** | Video |
| **DEF-ACCOUNT** | Your body is so sexy |
| **MV7** | thank you king |
| **DEF-ACCOUNT** | Go get a brush for me |
| **MV7** | i don't have one mines in the car since i'm at a hotel anything else? |
| **DEF-ACCOUNT** | Hm more tits |

| | |
|---|---|
| **MV7** | okay |
| **DEF-ACCOUNT** | Rub them |
| **DEF-ACCOUNT** | Put your face in it |
| **DEF-ACCOUNT** | More |
| **DEF-ACCOUNT** | Now do an ass one but without your panties and bend over |
| **DEF-ACCOUNT** | Spread your ass though |
| **DEF-ACCOUNT** | You made me cum |

The defendant had live video calls with MV7. For example, on June 19, 2020, and June 20, 2020, the defendant had a conversation with MV7 wherein he ordered MV7 to "show me your tits" and then told her wanted live video of it.

| | |
|---|---|
| **DEF-ACCOUNT** | [MV7] |
| **MV7** | yes |
| **DEF-ACCOUNT** | Show me your tits. |
| **MV7** | okay |
| **MV7** | i'm at my family reunion so i have to hurry |
| **MV7** | in the bathroom |
| **DEF-ACCOUNT** | You keep making these fucking excuses. |
| **MV7** | it's not an excuse ? |
| **DEF-ACCOUNT** | More. |
| **MV7** | *[Sends a 4-second video of MV7 touching her exposed breasts]* |
| **MV7** | *[Sends a picture of MV7 in a bra. MV7's face is not visible, and the camera is focused on her breasts.]* |
| **MV7** | i took those just now |
| **DEF-ACCOUNT** | I wanted them live but okay. |
| **MV7** | i'm sorry but my grandma needed the bathroom |
| **DEF-ACCOUNT** | [redacted] |
| **MV7** | yes |
| **DEF-ACCOUNT** | Show me your tits. |
| **MV7** | alright. live video ? |
| **DEF-ACCOUNT** | Yes |
| **MV7** | okay:) |
| **DEF-ACCOUNT** | More |
| **DEF-ACCOUNT** | Now do a picture with your face in it stick out your tongue |
| **DEF-ACCOUNT** | You made me cum |

MV7 was interviewed by law enforcement. *See* Exhibit 12 (under seal). MV7 described how she was added to a Snapchat group chat, "Female Guard." The defendant asked girls in the

group chat for nude pictures. He said he had software that allowed him to hack accounts, and he threatened to hurt MV7 and her family. The defendant sent a video to the group, purportedly of himself, strangling a girl on a bed. MV7 did not tell any adults about the situation with the defendant because she was scared. The defendant asked MV7 to recruit girls under 17 to the group.

**<u>MV8</u>**

Between on or about July 27, 2020, and on or about September 12, 2020, the defendant sexually exploited MV8, who was 14 years old at the time. For example, on August 30, 2020, the defendant sent the following messages to MV8:

| | |
|---|---|
| **DEF-ACCOUNT** | I want some tits |
| **DEF-ACCOUNT** | Haven't gotten any in a long time from you |
| **MV8** | oh idk if I could |
| **DEF-ACCOUNT** | Hm? |
| **MV8** | I'll try to take a couple of pictures |
| **MV8** | It's Bc I'm still in trouble yk |
| **DEF-ACCOUNT** | Okay thank you |
| **MV8** | Okay |
| **DEF-ACCOUNT** | Stick your tongue out |
| **MV8** | sorry I can't take more. |
| **DEF-ACCOUNT** | Now an ass pic bending over that's it |
| **DEF-ACCOUNT** | 😤 |
| **MV8** | idk if I can |
| **DEF-ACCOUNT** | Last one |
| **MV8** | okay |
| **DEF-ACCOUNT** | If you can |
| **DEF-ACCOUNT** | You made me cum |
| **MV8** | that's good to know |
| **DEF-ACCOUNT** | Am I the first guy you've ever sent nudes to? |
| **MV8** | yea |

On September 10, 2020, the defendant sent the following messages to MV8:

| | |
|---|---|
| **DEF-ACCOUNT** | Are you ready for your gynecology exam? |
| **MV8** | what is that |

| | |
|---|---|
| **DEF-ACCOUNT** | I'm obviously a certified gynecologist doctor with a PhD in gynecology. |
| **MV8** | rlly? |
| **DEF-ACCOUNT** | Yes for your gynecology exam I need you to spread your inner vaginal area open so I can check for infection or risk of infection |
| **MV8** | ahhhh |
| **DEF-ACCOUNT** | You have to |
| **MV8** | rlly? like fr? |
| **DEF-ACCOUNT** | Hes. |
| **DEF-ACCOUNT** | Yes. |
| **MV8** | oh damn |
| **DEF-ACCOUNT** | Right now |
| **MV8** | ig then |
| **DEF-ACCOUNT** | Where is it |
| **MV8** | oh okay hold up. |
| **DEF-ACCOUNT** | Okay |
| **MV8** | ima js take one Bc my mom gonna take my phone soon |
| **DEF-ACCOUNT** | When |
| **MV8** | Idkkkkk she js takes it n is like go to sleep |
| **DEF-ACCOUNT** | Sneak it |
| **MV8** | I can't she holds onto it |
| **DEF-ACCOUNT** | Beat her up then |
| **MV8** | I can't shes bigger |
| **DEF-ACCOUNT** | Let me make a report on my findings I'll be back soon |
| **MV8** | okay |
| **DEF-ACCOUNT** | Seems like everything checks out you're completely healthy |

MV8 was interviewed by law enforcement and described how the defendant asked her almost daily for pictures of herself. *See* Exhibit 13 (under seal). MV8 said she feared that if she did not comply with the defendant's demands, he would hack her social media accounts. MV8 was also added to a group chat with other girls. The defendant demanded that all the girls be present for a group phone call, otherwise they would be in trouble. The defendant demanded the girls address him as "King." MV8 said she sent the defendant a picture of her vagina because he told her he needed to conduct an examination.

**MV9**

Between on or about May 30, 2020, and on or about August 14, 2020, the defendant sexually exploited MV9, who was 13 years old at the time. For example, on June 10 and 11, 2020, the defendant sent the following messages to MV9:

| | |
|---|---|
| **DEF-ACCOUNT** | Show me your pussy |
| **MV9** | Ok don't ss[4] tho |
| **DEF-ACCOUNT** | I won't. |
| **MV9** | Ok |
| **MV9** | I'm so insecure about my pussy |
| **MV9** | [*media not recovered*] |
| **MV9** | 🥺 |
| **DEF-ACCOUNT** | That's sexy |
| **DEF-ACCOUNT** | Show me your ass |
| **MV9** | I have to go in about 2 minutes king |
| **MV9** | Out of the bathroom |
| **DEF-ACCOUNT** | Okay more tits |
| **MV9** | Ok |
| **DEF-ACCOUNT** | Both |
| **MV9** | I have to leave the bathroom now |
| **MV9** | I'm leaving to my moms |
| **DEF-ACCOUNT** | You made me cum |
| **MV9** | I'll show u more once I get to my moms |
| **MV9** | If u want |
| **DEF-ACCOUNT** | Okay |
| **MV9** | When I get to my moms I'll show u 3 more tit pics |
| **MV9** | Ok |
| **DEF-ACCOUNT** | Okay |
| **MV9** | Ok |
| **DEF-ACCOUNT** | She has to die. |
| **MV9** | Who |
| **MV9** | Who |
| **DEF-ACCOUNT** | Your sister |
| **MV9** | Why |
| **MV9** | Why do u have to kill my sister [MV13] what did she do |
| **DEF-ACCOUNT** | She ignored my messages. |
| **MV9** | She's busy king |

[4] "ss" is shorthand for "screenshot."

| | |
|---|---|
| **MV9** | She told me to tell u |
| **DEF-ACCOUNT** | Sure she is. |
| **MV9** | She told me to tell u |
| **DEF-ACCOUNT** | Show me your tits. |
| **MV9** | Ok |
| **DEF-ACCOUNT** | Do better pictures than that |
| **MV9** | My phone is cracked so the pics are blurry |
| **DEF-ACCOUNT** | Keep going |

MV9 then sent the defendant the following screenshot of messages between her and MV13:




The conversation between MV9 and the defendant continued as follows:

| | |
|---|---|
| **DEF-ACCOUNT** | Fine |
| **DEF-ACCOUNT** | Go get a brush for me |
| **MV9** | Ok |
| **DEF-ACCOUNT** | I want you to suck on it for me like you're sucking on my cock |
| **MV9** | Ok |
| **DEF-ACCOUNT** | But only use your head to make your mouth go up and down on it to do all the work not your hand |
| **MV9** | Ok |
| **DEF-ACCOUNT** | Good girl |
| **MV9** | Can I use my hands to hold it |
| **DEF-ACCOUNT** | Yes |
| **MV9** | Ok |
| **MV9** | King |
| **MV9** | I gotta clean out my storage it won't let me take a video |

| | |
|---|---|
| **DEF-ACCOUNT** | On snap |
| **MV9** | Yea |
| **DEF-ACCOUNT** | Send it in a snap video |
| **MV9** | It won't let me unless I clean my storage |
| **DEF-ACCOUNT** | Then hurry up. |
| **MV9** | Ok |
| **MV9** | It won't let me |
| **MV9** | I'm scared your gonna kill me cause it won't work |
| **MV9** | I'm trying it won't work |
| **MV9** | It won't video |
| **MV9** | I wanna cry |
| **DEF-ACCOUNT** | Sounds like a lie to me |
| **MV9** | No I'm not lying |
| **MV9** | I swear |
| **MV9** | It won't work |
| **DEF-ACCOUNT** | Take video like that |
| **MV9** | |
| **MV9** | Look I held it down |
| **MV9** | It won't work |
| **DEF-ACCOUNT** | Okay. |
| **MV9** | Do u believe me |
| **MV9** | I'm trying so hard |
| **MV9** | I so loyal and do what u say but it won't work |
| **DEF-ACCOUNT** | Okay. |
| **DEF-ACCOUNT** | Just show me your tits |
| **MV9** | Will u kill me |
| **DEF-ACCOUNT** | No |
| **MV9** | Ok |
| **DEF-ACCOUNT** | With your face again |
| **MV9** | Ok |
| **DEF-ACCOUNT** | You look like this girl I used to have a crush on her name was [redacted] |
| **MV9** | Oh |
| **DEF-ACCOUNT** | Show me your ass though |
| **MV9** | Without clothes |
| **DEF-ACCOUNT** | With your panties |
| **MV9** | Ok |
| **MV9** | [*sends multiple mirror selfies*] |
| **MV9** | Those were from yesterday |
| **DEF-ACCOUNT** | Now take it off very sexy |
| **MV9** | Take the panties off |
| **MV9** | ? |

| | |
|---|---|
| **MV9** | ?? |
| **DEF-ACCOUNT** | Yes |
| **MV9** | Ok |
| **MV9** | There |
| **DEF-ACCOUNT** | Show me your pussy too |
| **MV9** | Ok |
| **MV9** | My pussy is ugly ik |
| **MV9** | But |
| **DEF-ACCOUNT** | No it’s sexy |
| **MV9** | It is |
| **DEF-ACCOUNT** | Show me your tits again with your face in it I’m going to cum |
| **MV9** | Is that good |
| **DEF-ACCOUNT** | You made me cum |

MV9 was interviewed by law enforcement and described the threats and harassment she received from the defendant. *See* Exhibit 14 (under seal). The defendant claimed he had bodyguards and he would force girls in the group chat to have online relationships with the bodyguards. The defendant threatened to hurt MV9’s family, including her little cousins. After MV9 disclosed the situation to her mother, MV9’s mother had a conversation with the defendant. The defendant threatened to rape MV9 in front of her mother. MV9 believed that the defendant was capable of following through on his threats. In a group video call, the defendant played a video of what appeared to be him or possibly somebody else murdering a little girl. The next day, the defendant showed the group a video of four men tying a little boy to a chair and decapitating him. The defendant demanded the girls show their genitals and “finger themselves.” The defendant also published some of the girls’ home addresses in the group. The defendant distributed other victims’ CSAM in the group chat, including CSAM depicting MV13. MV9 became depressed and feared for her physical safety. The defendant said he planned to travel to where MV9 lived. She believed he was going to hurt her and considered suicide.

**MV10**

Between on or about May 29, 2020, and on or about June 3, 2020, the defendant sexually exploited MV10, who was 14 years old at the time. For example, on May 28, 2020, the defendant sent the following messages to MV10:

| | |
|---|---|
| **DEF-ACCOUNT** | Send me an ass pic with your panties on for me |
| **DEF-ACCOUNT** | Let daddy see your pussy |
| **DEF-ACCOUNT** | Do you have a hair brush? |
| **MV10** | I do |
| **MV10** | you're gonna make me put it in me? |
| **MV10** | I love doing that daddy |
| **DEF-ACCOUNT** | Good I want you to get it suck on it like you're sucking on my cock use your head to do all the work not your hand |
| **MV10** | got it |
| **DEF-ACCOUNT** | I want you to do that for me after |
| **DEF-ACCOUNT** | Good girl |
| **MV10** | It's sending daddy |
| **MV10** | After they send do you want me to stick it in me? |
| **DEF-ACCOUNT** | Suck on it some more |
| **DEF-ACCOUNT** | Call me on here beautiful |
| **MV10** | Wym babe? |
| **DEF-ACCOUNT** | Call |
| **DEF-ACCOUNT** | You don't have to talk |
| **MV10** | I can't babe my brother is in the other room and he could walk in at any time |
| **DEF-ACCOUNT** | I'll be quick |
| **DEF-ACCOUNT** | Trust me |
| **MV10** | Okay babe do you want to call or video call? |

Approximately 7 minutes later, they exchanged the following messages:

| | |
|---|---|
| **MV10** | I hope you enjoyed |
| **DEF-ACCOUNT** | Trust me I did |

On May 30, 2020, the defendant sent MV10 the following messages:

| | |
|---|---|
| **DEF-ACCOUNT** | You're going to make daddy cum tonight. |
| **MV10** | Do you want me to make you cum daddy |
| **DEF-ACCOUNT** | I'm going to fuck you really hard one day. |
| **MV10** | oh you are? |

| | |
|---|---|
| **MV10** | You better |
| **MV10** | Make me your queen in real life |
| **DEF-ACCOUNT** | That's right beautiful |
| **DEF-ACCOUNT** | Bend over and spread your ass for me |
| **DEF-ACCOUNT** | I like that |

On May 29, 2025, the defendant told MV10, "I have a rape kink[.]"

MV10 was interviewed by law enforcement. *See* Exhibit 15 (under seal). MV10 described how she was added to a large group chat with the defendant. The defendant told MV10 that if she left the group chat, failed to provide pictures, or told anyone about the group, she would be hacked. The defendant threatened MV10's family. He told MV10 to send him pictures of her breasts and vagina nearly everyday. On live video calls, the defendant told MV10 to expose her breasts and vagina and to masturbate.

**<u>MV11</u>**

Between on or about June 14, 2020, and on or about September 12, 2020, the defendant sexually exploited MV11, who was 13 years old at the time. For example, on August 27, 2020, the defendant sent the following messages to MV11:

| | |
|---|---|
| **DEF-ACCOUNT** | Now show daddy your tits. |
| **DEF-ACCOUNT** | Now. |
| **MV11** | No |
| **DEF-ACCOUNT** | It was a fucking meme. |
| **DEF-ACCOUNT** | Now do it or I'm taking your account then I'm going after your girlfriend. |
| **MV11** | OK I'm sorry hold on let me take the picture |
| **DEF-ACCOUNT** | Good girl. |
| **DEF-ACCOUNT** | Good girl |
| **DEF-ACCOUNT** | [*sends a picture of a female bent over at the waist with her buttocks and genitals exposed to the camera*] |
| **DEF-ACCOUNT** | Do a picture like that |
| **MV11** | I can try |
| **DEF-ACCOUNT** | Spread your ass too |
| **DEF-ACCOUNT** | Good girl. |

During her interview with law enforcement, MV11 described how the defendant had sent videos in the group chat depicting people killing each other. *See* Exhibit 16 (under seal). On one occasion, MV11 was led to believe it was the defendant killing someone. He also sent videos showing people being raped, which was particularly difficult for MV11 as she had been sexually assaulted before. MV11 described how the defendant would tell girls that if they did not send nudes, he would kill them. He threatened to kidnap girls and hide their bodies where they would never be found. He also threatened to post girls' nudes on social media. MV11 discussed how MV13 was in the group and was forced to show her vagina in a group call. The defendant also sent a naked picture of MV13 to MV9. The defendant knew MV11's address and threatened to go there and kidnap or kill her.

**MV12**

Between on or about August 16, 2020, and on or about September 12, 2020, the defendant sexually exploited MV12, who was 15 years old at the time. For example, on August 19, 2020, the defendant sent the following messages to MV12:

| | |
|---|---|
| **DEF-ACCOUNT** | Show me your tits |
| **DEF-ACCOUNT** | Squeeze them together |
| **DEF-ACCOUNT** | Let me see your ass |
| **DEF-ACCOUNT** | Without pants |
| **DEF-ACCOUNT** | *[sends screenshot of a Snapchat photo depicting a female bent over at the waist exposing her genitals. The female is holding a cell phone and taking a picture in the mirror.]* |
| **DEF-ACCOUNT** | Do it like that |
| **MV12** | I don't have a mirror that I can use at the moment |
| **DEF-ACCOUNT** | You don't need one |
| **MV12** | Okay |
| **DEF-ACCOUNT** | Without panties |
| **MV12** | But I- yes king |
| **DEF-ACCOUNT** | Good girl |
| **DEF-ACCOUNT** | Spread your legs some more |
| **DEF-ACCOUNT** | Spread your ass for me too |

| | |
|---|---|
| **DEF-ACCOUNT** | Good girl |
| **MV12** | Is that all king? |
| **DEF-ACCOUNT** | Do a tit one sticking out your tongue |
| **DEF-ACCOUNT** | Make your tits look bigger |
| **DEF-ACCOUNT** | Good girl |
| **MV12** | Is that all? |
| **DEF-ACCOUNT** | Yes |

On September 1, 2020, the defendant sent MV12 two videos of what appears to be a man being shot to death in a street. On September 10, 2020, the defendant sent the following messages to MV12:

| | |
|---|---|
| **DEF-ACCOUNT** | Are you ready for your gynecology exam? |
| **MV12** | Ummm...? What do I have to do |
| **DEF-ACCOUNT** | You have to spread your inner vaginal area open so I can check for infection or etc |
| **MV12** | Ummm |
| **MV12** | That's a bit weird |
| **DEF-ACCOUNT** | It's okay I'm is certified gynecologist. |
| **MV12** | But I don't.... |
| **DEF-ACCOUNT** | It's okay again I have a PhD in gynecology. |
| **MV12** | It's weird |
| **DEF-ACCOUNT** | Do or |
| **DEF-ACCOUNT** | It |
| **DEF-ACCOUNT** | Your doctor demands it |
| **MV12** | What about your brother |
| **DEF-ACCOUNT** | He consents to it |
| **MV12** | Ugh okay |
| **DEF-ACCOUNT** | Okay do it |
| **MV12** | There |
| **DEF-ACCOUNT** | I'll have your report back soon |

**<u>MV13</u>**

Between on or about June 9, 2020, and on or about September 29, 2020, the defendant sexually exploited MV13, who was 14 years old at the time. For example, on June 15, 2020, the defendant sent the following messages to MV13:

| | |
|---|---|
| **DEF-ACCOUNT** | [MV13]. |
| **MV13** | Yes king |
| **DEF-ACCOUNT** | I want to see your tits now. |
| **DEF-ACCOUNT** | I gave you enough time |
| **DEF-ACCOUNT** | You have two minutes to show me |
| **MV13** | King |
| **MV13** | I am crying |
| **DEF-ACCOUNT** | Show me if you're loyal. |
| **DEF-ACCOUNT** | Take it off and show me both of them |
| **DEF-ACCOUNT** | Both of your tits together |
| **DEF-ACCOUNT** | Hurry up |
| **MV13** | Ok I have go to I am says good bye to my dog like Rip to my dog |
| **DEF-ACCOUNT** | Your tits are sexy I want to suck on them |
| **DEF-ACCOUNT** | No |
| **MV13** | King please |
| **DEF-ACCOUNT** | Not yet |
| **MV13** | This so hard me |
| **DEF-ACCOUNT** | Relax |
| **MV13** | I can't |
| **DEF-ACCOUNT** | Take an ass pic with your panties on for me |
| **DEF-ACCOUNT** | Then you csn go |
| **DEF-ACCOUNT** | Can* |

On September 10, 2020, the defendant messaged MV13 and asked her, "Are you ready for your gynecology exam?"

The defendant saved multiple sexually explicit images and videos of MV13 on his cell phone. One video, a screen recording of a live Snapchat video call, depicts MV13 removing her underwear and exposing her genitals to the camera. MV13 is shown rubbing her face, seemingly in distress. During the 1-minute, 40-second video, MV13 appears utterly miserable.

MV13 was interviewed by law enforcement. *See* Exhibit 17 (under seal). MV13 was connected to the defendant through another victim. The defendant added her to a group chat and group video calls. MV13 described how the defendant made girls show off their bodies during group video calls. MV13 tried to block the defendant on Snapchat, but he called her on Instagram

and threatened her safety. The defendant threatened to take over her account if she refused to listen to him. MV13 felt physically unsafe and started sleeping with a light and a teddy bear. The defendant forced MV13 to create and send him sexually explicit pictures of herself. He threatened to distribute the pictures to other girls. The defendant also threatened to find and kill MV13 unless she provided the login to her Instagram account. MV13 disclosed that when she refused to comply with the defendant's demands, he contacted her brother and her cousins and sent them a naked picture of MV13. MV13 disclosed that she "just felt like [she] was a slave to him."

**G. The defendant is charged and convicted of sexually assaulting FFX VICTIM 1 and FFX VICTIM 2 as well as soliciting PWC VICTIM 2 for CSAM.**

On October 1, 2020, FCPD arrested the defendant on charges of rape and forcible sodomy of FFX VICTIM 1 and FFX VICTIM 2. With support from Prince William County Police, FCPD also executed a search warrant at the defendant's residence in Prince William County. They found the defendant's black ski mask and LG cell phone stashed underneath items in his bedroom closet. *See* Exhibit 18. The defendant later pleaded guilty to the charges and was sentenced to an active term of imprisonment of 25 years. PSR ¶ 207.

The defendant was also charged in Prince William County with possession of child pornography and solicitation of a minor for his offenses against PWC VICTIM 2. He pleaded guilty and on October 5, 2023, the defendant was sentenced to an active term of imprisonment of 5 years and two months. PSR ¶ 206.

**The defendant saves child sexual abuse material on his cell phones.**

The defendant knowingly possessed over 20 videos and 23 images depicting child sexual abuse on two cell phones – a Samsung cell phone and an LG cell phone – seized by law enforcement in July 2020 and October 2020 respectively. On his LG cell phone, the defendant saved sexually explicit depictions of MV4, MV8, and MV13. For example, the defendant screen

recorded and saved a video of MV13 masturbating on a live Snapchat call. The defendant also saved a video on his LG phone a video of himself sexually assaulting FFX VICTIM 1. On his Samsung cell phone, the defendant had images of MV2 and FFX VICTIM 2 performing oral sex on the defendant.

The defendant also saved on his cell phones violent depictions of murder and gore. For example, one video shows a gloved man strangle a woman, seemingly to death. Other images show bloody people who appear to have been violently murdered. The defendant's LG cell phone also contained a screenshot of an article titled, "How to Rape a Woman and Get Away With It" (shown below).



How To Rape A Woman And Get Away With It

Jenna Sauers
10/29/10 10:05AM •
Filed to: CRIMES AND MISDEMEANORS

616 1

Timothy West broke into a stranger's house at 1:30 in the morning and raped her at knifepoint. Twice. West admitted as much on tape, when he called his victim and asked, "You mad at me?" But he was just acquitted.

West's alleged victim testified that in March of 2009, West came through her kitchen window, threatened her with a knife, and sexually assaulted her while her parents and brother slept

According to the metadata, this screenshot was created on September 20, 2020.

**H. The defendant sexually exploits MV4 while awaiting trial on his sexual assault charges.**

In May 2022, while detained in the Fairfax County Adult Detention Center pending trial on his sexual assault charges, the defendant used jail communication devices to, yet again, sexually exploit MV4. PSR ¶ 208. The defendant enticed MV4 to send him pictures of her in various states of undress. He was subsequently charged and convicted in Fairfax County Circuit Court of taking indecent liberties with a minor. He pleaded guilty and on July 19, 2024, the defendant was sentenced to 10 years in prison, to run concurrent with his 25-year sentence for sexually assaulting FFX VICTIM 1 and FFX VICTIM 2.

## II. Procedural History

On December 11, 2025, a federal grand jury in the Eastern District of Virginia returned a 15-Count Indictment charging the defendant with sexual exploitation of 13 minor victims, coercion and enticement of a minor, and possession of child sexual abuse material. Dkt. 1. On December 18, 2025, a Writ of Habeas Corpus ad Prosequendum was issued, commanding the Green Rock Correctional Center in Chatham, Virginia to surrender the defendant to the United States Marshals Service for his appearance in the Eastern District of Virginia. On January 2, 2026, the defendant was surrendered to federal authorities and he has been held in federal custody since that time.

On April 2, 2026, the defendant entered pleas of guilty to Counts 13 and 15 of the Indictment. Sentencing was scheduled for September 24, 2026.

## III. The Defendant's Jail Adjustment

Despite his lengthy relationship with law enforcement and incarceration, the defendant continues to engage in lawless behavior while incarcerated. For example, the defendant has

incurred multiple violations since his arrest in January 2026 on the instant Indictment. The defendant vandalized and attempted to flood his holding cell at the courthouse. He has also reportedly damaged the cellblock cells, broke a window in the cellblock interview room, and used racial slurs on deputies. PSR ¶ 14. In April 2026, the girlfriend of the defendant's cellmate complained that the defendant had called her 17 times in 2 days, trying to gather information about her relationship and disrupt it. *Id.* ¶ 13. And in March 2026 the defendant emailed a former cellmate what appears to be a script to threaten and extort women. *See* Exhibit 19.

The defendant committed similar violations while incarcerated pending trial in Fairfax County. *See* Exhibit 20. On multiple occasions, he was cited for cutting a hole in his mattress. He flooded his jail cell on multiple occasions. And at one point, he slipped a note under a cell door to another inmate with information on committing criminal fraud and possible suicide.

## SENTENCING ANALYSIS

### I. Statutory Penalties and Guidelines Calculations

To determine an appropriate sentence, "[a] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Next, "the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *Id.* Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to promote respect for the law, provide just punishment, deter criminal conduct, protect the public, and avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a).

Although the guidelines are advisory and are only one of the factors listed in § 3553(a), they assist the Court by "provid[ing] certainty and fairness in meeting the purposes of

sentencing, [while] avoiding unwarranted sentencing disparities." *United States v. Booker*, 543 U.S. 200, 264 (2005) (internal quotation marks and citations omitted). Indeed, in the ordinary case, there will be a significant amount of overlap between the guidelines range and the remaining § 3553(a) factors, because the guidelines "reflect a rough approximation that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007). Thus, although the guidelines are not mandatory, they remain "the starting point and the initial benchmark" in ensuring fair and just sentencing both for defendants, individually, and across multiple cases, collectively. *Gall v. United States*, 552 U.S. 38, 49 (2007). Ultimately, the sentence imposed must meet a standard of reasonableness. *See Booker*, 543 U.S. at 260-61.

The U.S. Probation Office prepared a PSR containing the defendant's Guidelines calculation. As explained in the PSR, the Guidelines were first calculated in separate groups for each victim. A multiple count adjustment, a 5-level increase for repeat and dangerous sex offender, and the acceptance of responsibility credits results in a total offense level of 49. *See* PSR ¶¶ 98-204. Pursuant to USSG Chapter 5, Part A, comment. (n. 2), "[a]n offense level of more than 43 is to be treated as an offense level of 43." Therefore, based on a total offense level of 43 and a Criminal History Category III, the defendant's Guidelines range is Life, capped at 480 months. *Id.* at ¶¶ 245-246.

## II. Objections to the PSR

The defendant submitted a letter to Probation dated September 4, 2026, raising several objections to the PSR, including the application to the sexual contact enhancement under USSG § 2G2.1(b)(2)(A) to MV1, MV5, and MV7, and requesting several corrections. It appears all objections and corrections have been made except for the objections related to USSG §

2G2.1(b)(2)(A).[5] For the reasons articulated by Probation in its response (PSR pp. 61-62), the defendant's objections to this enhancement should be overruled. But as the defendant concedes in his letter, even if the Court grants this objection, the defendant's Guidelines range does not change.

## III. Section 3553(a) Factors

The United States believes that a sentence of 40 years' imprisonment to run consecutive to the defendant's 30-year state sentence, plus a lifetime term of supervised release, is sufficient but not greater than necessary to reflect the totality of the defendant's conduct and comport with the purposes of sentencing set forth in 18 U.S.C. § 3553.

### A. The nature, circumstances, and seriousness of the defendant's offense.

The seriousness of the defendant's offenses cannot be overstated. He was relentless and calculated in every step of his exploitation. The defendant used Snapchat to prey on minor girls, whose youth and extreme vulnerability he exploited for his sexual gratification. He threatened the girls with physical violence if they did not comply with his demands. He warned them that he had, had girls raped and killed for disobeying him. And he sent the girls videos of women being murdered and threatened their family members. With MV13, the defendant threatened, in graphic terms, to murder her baby sister, rape her, and shoot her in the head. The defendant ordered the girls to send him pictures and to masturbate with objects. And he humiliated his victims by forcing them to engage in "gynecology exams" that involved having the girls spread their vaginal area open so he could inspect their genitals via images or on live video calls.

[5] In his letter, the defendant also argues that USSG § 5G1.3(b) applies in this case, thus requiring that his federal sentence run concurrently to the remainder of his undischarged state sentence. As it is not technically an objection to the Guidelines calculation, the government addresses this argument in Section IV below.

The defendant's crimes were not a juvenile indiscretion or the product of a momentary lapse of judgment. Rather, the defendant made a calculated effort to exert his power over minor girls, convincing them he was an influential and dangerous cybercriminal, to obtain sexually explicit content of them. Scaring and debasing the girls was both a means to an end and something the defendant appeared to relish. Ultimately, in many cases, the defendant's scheme worked. Young girls who feared physical harm if they did not comply with the defendant's demands exposed themselves in pictures, videos, and live video calls. They showed the defendant the most intimate parts of themselves, which he frequently shared later with other victims. The defendant threatened the girls, telling them he knew their addresses and where they went to school. He sent them videos of women being raped and people being murdered, implying they were next. In short, he stole their youth, their trust, and their dignity. One can only imagine the damage the defendant's crimes have inflicted on these girls and their families.

Indeed, children who are victimized through the production of child sexual abuse material "undeniably suffer serious harm when they are used to create this type of material." *United States v. Wellman*, 663 F.3d 224, 232 (4th Cir. 2011). Quite simply, "sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional, and sexual development in ways which no just or humane society can tolerate." *Kennedy v. Louisiana*, 554 U.S. 407, 468 (2008) (Alito, J., dissenting) (quotation marks omitted). Through his crimes, the defendant has harmed young girls who will no doubt suffer severe psychological and emotional damage as a result.

The nature and seriousness of the defendant's crimes weigh in favor of a 40-year sentence.

**B. The Defendant's History and Characteristics**

The defendant's family history and background, detailed in the PSR, sheds no light on why he decided to pose as the leader of a criminal organization and prey on minor girls. To the extent that the defendant seeks to use his alleged past sexual abuse to mitigate his crimes, the Court should be extremely skeptical of his claims.

First, the defendant's allegations are uncorroborated, and evidence shows that sex offenders' claims about their own sexual victimization are often fabricated or exaggerated. Further, the defendant has a documented history of lying to law enforcement, probation, and jail staff when it suits his purposes. Second, even if the defendant did suffer sexual abuse during his childhood, research shows that survivors of such abuse are in no way predestined to perpetuate a "cycle of abuse" by victimizing others.

**i. Sex offenders self-reports of childhood sexual abuse are unreliable.**

Research has consistently shown that self-reports of sexual victimization by those accused of sexual offending are inherently unreliable in a statistically significant way. In 2001, a series of studies from 1978 through 1994 were examined in an article published in Federal Probation. The article explained that the three different studies showed remarkable consistency such that their conclusions could be summarized as follows:

1. Adults will lie and understate by a factor of five to six the number of sexual crimes they have committed.
2. Adults will lie and under report their history as a juvenile sex offender.
3. Adults will lie and **over** report their history of childhood sexual victimization.

4. With polygraphs, they disclose six times as many victims and most confess that they were sexually offending as juveniles.

Hindman, J. & Peters, J.M. (2001), *Polygraph testing leads to better understanding adult and juvenile sex offenders*, Federal Probation, 65(3), 8–15 (emphasis added). One chart puts the evidence in stark relief:

**TABLE F**

*Comparing the Histories of Adult Offenders Before and After Polygraph 1994–1999*

| | Pre-Polygraph | Post-Polygraph |
|---|---|---|
| Average number of victims reported | 2.9 | 11.6 |
| Percent reporting being sexually abused as a child | 61% | 30% |
| Percent reporting sexually abusing others as a child | 27% | 76% |

As the chart makes clear in the second row, before taking a polygraph, 61% claimed to have been sexually abused as a child. But that number fell by half to 30% when the polygraph examination was administered. In other words, more than half of the defendants who claimed to have been sexually abused later admitted they had lied. The article's authors summarized the situation thus: "Today, just as in 1978, adult offenders not polygraphed are very likely to minimize the history of their abusive behavior and to overstate their own histories of victimization." (*Id.*)

Experts have similarly voiced concerns about the validity of offenders' self-reports that they were abused as children, given that "[t]hese statements are often made in a legal or group treatment setting, in which pedophiles may be trying to mitigate their sentence or gain sympathy for their behavior."[6] In fact, "[s]tudies into prevalence of childhood sexual abuse among sex

[6] Hall, R.C.W., *A Profile of Pedophilia: Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues,* Mayo Clinic Proceedings 82(4), 464 (2007).

offenders have produced mixed results with 8% to 60% of child molesters reporting having been sexually abused as a child. Variability in prevalence rates across studies may be due in part to differing motivations on the part of subjects to give self-serving histories."[7] Additionally, "[p]erpetrators may lie about their actions or attempt to excuse their behavior by pointing to their own victimization as children."[8] Moreover, "[e]xcuse-making may be more prevalent in settings where such behavior may be useful, such as in the early stages of therapy (before learning that excuse-making is not acceptable) or during the trial process (perhaps under the guidance of enthusiastic defense lawyers)."[9] Indeed, as explained above, "when verified by polygraph . . . the percentage of offenders who experienced sexual victimization in their own lives drops significantly."[10]

Here, the defendant reports that he was molested by his math tutor when he was 11 and his babysitter took his virginity when he was 13. Notably, while the defendant previously reported abuse by the math tutor to Prince William County Probation for his PSR in the case involving PWC VICTIM 2, he expressly denied any other trauma or abuse during his childhood. Furthermore, the defendant has a well-documented history of lying when it serves his purposes.

When interviewed by Fairfax County Police, the defendant lied repeatedly about his background and offenses. *See* Exhibit 21 (under seal). He claimed that someone named Schetz

---

[7] Haywood, Thomas et al., *Cycle of Abuse and Psychopathology in Cleric and Noncleric Molesters of Children and Adolescents,* Child Abuse & Neglect 20(12) 1234 (1996).
[8] Briggs, F. and R. Hawkins, *A Comparison of the Childhood Experiences of Convicted Male Child Molesters and Men who were Sexually Abused in Childhood and Claimed to be Nonoffenders*, Child Abuse & Neglect 20(3), 232 (1996).
[9] *Id*.
[10] Hindman, Jan et al., *Shedding Light on the Histories of Sex Offenders Using Clinical Polygraphy,* The Sexual Predator (vol. IV), 20-5 (2010); *see also* Hindman, Jan et al., *Polygraph Testing Leads to Better Understanding Adult and Juvenile Sex Offenders*, Federal Probation 65(3), 8 (2001).

was using fake accounts online and extorting the defendant and his mother. The defendant said Schetz communicated with FFX VICTIM 2 on Snapchat and forced the defendant to meet her at the mall. He also said that FFX VICTIM 2 was the only girl he met up with in person. The defendant also lied about his victimization of PWC VICTIM 2 and FFX VICTIM 1. It was not until the defendant was presented with the incontrovertible evidence of his crimes that he finally started to provide (partially) truthful responses. Even still, the defendant denied meeting any girls outside of Fairfax and Prince William County, despite having flown to another state to have sex with and record MV2. And he said he had only gotten photos from four girls, despite having victimized over 40 girls in the preceding 7 months.

After the interview, the defendant wrote letters to FFX VICTIM 1 and FFX VICTIM 2. *See* Exhibit 22. In his letter to FFX VICTIM 1, he claimed he claimed he was caring for his very sick single mother and two little brothers. This, of course, was a lie as he was living with his uncle and cousins in Woodbridge at the time of his offenses, not taking care of anyone. Then, in his letter to FFX VICTIM 2, he wrote that he was sorry for what he had done and he "was going through [his] mother dying . . ." Also a lie.

The defendant made similar attempts to manipulate and lie to jail staff after his arrest in October 2020. According to Fairfax County Jail records, in December 2022, the defendant reported a "very severe loss in [his] family." *See* Exhibit 20 at 6. He claimed his 15-year-old brother had been killed after being struck by a drunk driver. The next month, a Sheriff followed up with the defendant, who admitted that it was not his brother who had been killed, but rather his cousin, and he learned about the death after meeting with his attorney. In fact, the defendant had not met with his attorney, and there had been no death in his family at all. The defendant was seen twice by a Chaplain to cope with this completely manufactured loss. He also tried to

use this lie to escape responsibility for hiding contraband pills inside his mattress, claiming he did so because his brother died and he did not have anything to live for.

**ii. The Cycle-of-Abuse Myth**

Even if the Court were to assume the defendant had been sexually abused as a child, it is arguably an *aggravating* factor that he responded to his own abuse by perpetrating sex crimes on young girls. The more common and humane response is for survivors of sexual abuse to *not* want anyone else to suffer as they did. In a study published in 2016, researchers conducted qualitative research on male victims of sexual abuse, inquiring why they had not perpetuated the abuse on others. "By far, the most commonly cited reason the participants gave for having not sexually offended was experiencing empathy for other people and having no desire to hurt others."[11] When asked to explain, participants in the study made statements such as, "Experiencing pain is like putting your hand in the fire. You don't have to tell anyone twice that they are experiencing pain. I wouldn't want to stick someone else's hand in the fire. . . I'm aware of the pain and emotions that an abused person would go through and I don't want to put anyone else through that."[12] The study's authors observed that "[s]uch evidence is unique as it directly contradicts the victim–offender cycle hypothesis because it demonstrates that not all victims become offenders and, in fact, the victimizing experience contributed to their status as a nonoffender."[13] In other words, instead of making them *more* likely to offend against a child, being a victim of sexual abuse actually makes them *less* likely to offend because the natural empathy developed from such experiences deters such perpetuating behavior. Moreover, the same report observed, numerous

---

[11] Osman SL. (2011). Predicting rape empathy based on victim, perpetrator, and participant gender, and history of sexual aggression. Sex Roles 64, 506–515.
[12] *Id.*
[13] *Id.*

studies have shown that "the majority of victims do not become sexual offenders,"[14] which "adds substantially to the argument that the pathway from victim to offender is not as direct as the literature would have us believe."[15]

Other researchers have similarly concluded that although "[t]he victim-offender cycle in male sexual abuse has been popularized as an explanation of why some males sexually offend," "there are serious limitations to this explanation."[16] As one journal article explained it, "sexual abuse at particular ages and frequency of abuse do not of themselves necessarily lead to an increased likelihood of perpetuating abuse across generations."[17] Indeed, "the data do not provide strong support for a cycle of sexual abuse encompassing a substantial proportion of male perpetrators."[18]

What is clear from the defendant's history is that he is a young man who has been given countless opportunities, resources, support, measures, and access to education. Despite this he has chosen—repeatedly—to hurt children. He has shown that no child is safe around him and not even incarceration has thwarted his attempts to intimidate and threaten victims to get what he wants—power and control. He has shown his ability to pivot and create means to access victims regardless of his circumstances. He has also shown, through his history, that he knows how to manipulate

---

[14] *Id.* (citing Jespersen et al., 2009; Thomas & Fremouw, 2009; Widom & Ames, 1994; Salter et al., 2003).
[15] *Id.*
[16] Lambie, Ian, et al., *Resiliency in the victim-offender cycle in male sexual abuse*, Sex Abuse: A Journal of Research and Treatment 14(1), 43 (2002).
[17] Briggs, F. and R. Hawkins, *A Comparison of the Childhood Experiences of Convicted Male Child Molesters and Men who were Sexually Abused in Childhood and Claimed to be Nonoffenders*, Child Abuse & Neglect 20(3), 230 (1996).
[18] Glasser, M. et al., *Cycle of child sexual abuse: links between being a victim and becoming a perpetrator*, The British Journal of Psychiatry 179, 488 (2001).

people, be that his victims, family, law enforcement, teachers, to get what he wants. And when tacit manipulation does not work, he has no qualms resorting to threats of violence and even death.

**C. Promote respect for the law and provide just punishment**

This Court must also consider the need to "promote respect for the law" at sentencing. 18 U.S.C. § 3353(a)(2)(A). Congress enacted federal criminal laws targeting CSAM offenses to address ongoing sexual abuse and victimization of children. S. Rep. 95-438, 5, 1978 U.S.C.C.A.N. 40, 42-43, 56. But this legislation and its later amendments are more than prophylactic measures. They reflect value judgments and the accepted moral norms of our society. As one Senate Judiciary Committee report concluded: "the use of children … as the subjects of pornographic materials is very harmful to both the children and the society as a whole," describing the conduct as "outrageous." S. Rep. 95-438, 5, 1978 U.S.C.C.A.N. at 43. Put differently, the defendant did not just violate federal law, he also transgressed universally recognized moral principles—specifically, the need to protect and nurture children and not to be titillated by depictions of their sexual abuse. Through his own conduct, the defendant threatened and sexually exploited multiple young girls, forcing them to create sexually explicit images and videos of themselves, and in the case of MV2 meeting her in person for sex and recording it. He knew what he was doing was both harmful and illegal, and yet he continued doing it anyway. This Court should craft a sentence that appropriately expresses social condemnation of the defendant's crimes, captures the serious harm he has caused, and promotes respect for the rule of law. The government's recommended sentence does all three.

**D. The need for the Sentence Imposed to Afford Adequate Deterrence and Protect the Public**

Both specific and general deterrence call for a significant sentence in this case. With respect to specific deterrence, the risk the defendant poses to children is enormous. The

defendant is a young man who only needed a cell phone to exploit numerous children and cause potentially lifelong harm. He poses a continuing risk to children anytime he has access to them, including through a phone or a computer. In fact, "[s]tudies and reports in this field are consistent with what judicial decisions show: pedophiles who have sexually abused children are a threat to continue doing so, and age does not remove the threat." *United States v. Irey*, 612 F.3d 1160, 1214 (11th Cir. 2010) (citing various studies and reports); *see also United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders."). A sentence of 40 years, consecutive to his state sentence, would protect the most vulnerable members of society—namely, children—from the defendant's conduct.

Indeed, the defendant manipulated, exploited, and enticed more than 40 minor girls to create and send him CSAM. He did this for at least 7 months while on state probation and receiving sex offender therapy for similar offenses. A mere two weeks after Prince William County took the defendant's Samsung cell phone after he tried to meet PWC VICTIM 2 at the mall, the defendant went on to rape FFX VICTIM 1 and record it on a new phone. He also continued to victimize other girls online, including many of the girls named in the Indictment. Even incarceration could not stop the defendant from sexually exploiting MV4.

General deterrence, too, is especially important in cases like this one, where the defendant used Snapchat, a platform popular among children and teens, to groom and exploit children. It has been widely reported that Snapchat is a commonly used platform by offenders who seek to meet and exploit children. *See* Imran Rahman-Jones, Oct. 31, 2024, "Snapchat most-used app for grooming, says NSPCC," (available at: www.bbc.com/news/articles/cze3p1j710ko) ("Snapchat is the most widely-used platform for

online grooming, according to police figures supplied to the children's charity the NSPCC. More than 7,000 Sexual Communication with a Child offences were recorded across the UK in the year to March 2024 - the highest number since the offence was created. Snapchat made up nearly half of the 1,824 cases where the specific platform used for the grooming was recorded by the police.); June 2024, "Trends in Financial Sextortion" (available at: info.thorn.org/hubfs/Research/Thorn_TrendsInFinancialSextortion_June2024.pdf) ("Perhaps due to features such as disappearing Direct Messages (DMs), Snapchat is a common platform for sending self-generated CSAM (SG-CSAM or nude selfies); recent surveys of youth found that 39% of 13- to 17-year-olds who had shared their own nudes did so via DM in apps where content disappears, like Snapchat."); Isha Bhargava, Jan. 24, 2023 "Child luring and exploitation through Snapchat is on the rise. Here's what you should look out for" (available at: www.cbc.ca/news/canada/london/child-luring-and-exploitation-through-snapchat-is-on-the-rise-here-s-what-you-should-look-out-for-1.6722978) ("Many modern social media apps are designed to delete messages after they've been sent or received; they're designed to keep parents in the dark about what their child is truly up to . . . This feature poses a risk as it can hide problematic behaviours."); Arthi Nachiappan, Mar. 1, 2024, "Snapchat flagged in nearly half of [U.K.] child abuse imagery crimes in past year" (available at: news.sky.com/story/snapchat-flagged-in-nearly-half-of-child-abuse-imagery-crimes-in-past-seven-years-13084150) ("Snapchat was flagged in nearly half of the crimes involving child abuse imagery over the past year[.]"); Zak Doffman, May 26, 2019, "Snapchat Has Become a 'Haven for Child Abuse' With Its 'Self-Destructing Messages' " (available at: www.forbes.com/sites/zakdoffman/2019/05/26/snapchats-self-destructing-messages-have-created-a-haven-for-child-abuse/).

More generally, in recent years NCMEC has observed an uptick in the number of online exploitation cases. In 2025, NCMEC reported having received 21.3 million reports of suspected child sexual exploitation. *See* 2025 CyberTipline Report (available at: https://www.missingkids.org/content/dam/missingkids/pdfs/2025-cybertipline-report.pdf). The Report detailed "a staggering increase in the number of reports the CyberTipline received related to the online enticement of children for sexual acts[.]" *Id*. at 9. Of the more than 21 million CyberTipline Reports submitted in 2025, nearly all of them were submitted by Electronic Service Providers, such as Snapchat. *Id*. at 15. And of the 1.4 million reports specifically concerning online enticement in 2025, there were "800 reports in which an offender traveled to meet a child in person and more than 80,000 reports concerning sextortion." *Id*. at 9. In short, social media applications, including Snapchat, are being used by offenders to victimize children and these crimes are exploding in number.

The need for effective deterrence through a serious sentence is essential to make it clear to offenders, like the defendant, who groom and exploit children on social media platforms, that the penalties for these crimes are steep. A sentence of 40 years would accomplish that aim.

## IV. The Court Should Impose a Consecutive Sentence

The defendant contends that any sentence for his sexual exploitation of MV13 and possession of child sexual abuse material should run concurrent to his state sentence for the rape and sodomy of FFX VICTIM 1 and FFX VICTIM 2 pursuant to U.S.S.G. § 5G1.3. This assertion hinges on the defendant's claim that his state convictions are relevant conduct under § 1B1.3. This is incorrect. As a threshold matter, the defendant bears the burden of showing that his state sentences are relevant conduct to his federal offense. *See United States v. Nania,* 724 F.3d 824, 833 (7th Cir. 2013) (collecting cases). What is more, courts have counseled that §

5G1.3(b) should be read in a way that avoids having increased culpable conduct decrease a defendant's sentence. *United States v. Brown,* 232 F.3d 44, 49 (2d Cir.2000) (*per curiam* ); *Nania,* 724 F.3d at 837. The defendant cannot meet his burden and for the reasons explained herein any sentence from his federal offenses should run consecutively to his state sentence.

Although an unfortunate commentary on the prevalence of child exploitation in our country, courts across the country have had occasion to assess factually analogous cases to the case at hand and routinely order federal offense sentences for production, possession and/or trafficking of CSAM to run consecutive to state sentences for sexual abuse of children. *See e.g. United States v. Wilson,* No. 23-4093, 2024 WL 1109235 (4th Cir. 2024) (affirming sentence for defendant's federal offense of solicitation of child pornography to run consecutive to state sentence for rape and explaining that "a concurrent sentence was merely advisory and did not bind the court."); *Nania,* 724 F.3d at 838 (affirming the defendant's federal sentence for the production and possession of child pornography to run consecutive to his state sentence for sexual abuse of the same minor victims featured in the child pornography); *United States v. Bidwell,* 393 F3.d 1206, 1209 (11th Cir. 2004) (affirming 15 year federal sentence for defendant's filming and trafficking of the images of his sexual abuse of a child to run consecutive to his 30 year state sentence for the sexual abuse of that same child; finding that the defendant's "state sentences were based on various forms of sexual abuse, [his] federal sentences were based on exploiting a minor in the production of sexually explicit material and distributing images of child pornography" and as such § 5G1.3(b) did not apply); *United States v. Ludwig,* 104 Fed. Appx. 145, 147 (10th Cir. 2004) (finding that where the defendant's federal sentence for production of child pornography ran partially consecutively to his state sentence for rape and sodomy of four minor victims (at least one of whom was the same victim from his federal

offense); *United States v. Hardy,* 23 Fed. Appx. 922, 923-24 (10th Cir. 2001) (affirming that § 5G1.3(b) did not apply and affirming the defendant's federal sentence for the production of child pornography to run consecutive for his state sentence of rape and sodomy of the same victim); *United States v. Shouse,* 755 F.3d 1104, 1108-09 (9th Cir. 2014)(affirming federal sentence for child pornography to run consecutive to state sentence).

Indeed, when faced with remarkably similar facts to the case at hand, the Seventh Circuit in *United States v. Boyle,* explained that the sexual assault of the child that formed the basis of the state charge was not related conduct under § 1B1.3 to the production and possession of sexually explicit images of that child and other children which formed the bases for the federal charges. 28 F.4th 798, 803 (7th Cir. 2022) (finding that the district court did not err in imposing a 50 year federal sentence to run consecutive to the defendant's 40 year state sentence). In evaluating whether the sexual abuse of the child (state offense) and the production and possession of CSAM (federal offenses) were related conduct, the Seventh Circuit explained that the dates of offenses varied (minimally) between his state and federal offenses, and as such the defendant's state conviction was not committed "during the commission of" his federal offenses nor was his sexual abuse of the child "reasonably characterized as conduct committed 'in preparation for' his federal offense" and the state conviction did not "encompass 'harm that resulted from' his federal conduct." *Id.* The Seventh Circuit then explained that the defendant's sexual abuse of the child (state conviction) was only relevant conduct for purposes of § 5G1.3 "if the sexual abuse was part of the 'same course of conduct' or 'common scheme' as his production or possession of images and videos of child sexual abuse. *Id.* The Seventh Circuit cautioned that this definition of "relevant conduct" is not applicable to the charge of production of CSAM because it cannot be grouped pursuant to § 3D1.2(d). *Id.* at 804. As such, the Seventh Circuit

found that the federal charge of production of CSAM and the state child sex offense were not related conduct. *Id.* The Court then went on to evaluate whether the possession charge was part of a common scheme or plan to the sexual abuse charge and counseled that:

> [f]or two or more offenses to constitute part of a common scheme or plan," the Guidelines explain, "they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi.*" *Id.* § 1B1.3 app. note 5(B)(i). Alternatively, offenses may be deemed part of the "same course of conduct" if they are sufficiently related as to constitute "part of a single episode, spree, or ongoing series of offenses." *Id.* § 1B1.3 app. note 5(B)(ii).
> Against this backdrop, we conclude that Boyle's state sexual abuse conviction is neither part of a "common scheme or plan" nor part of the "same course of conduct" as his federal child pornography possession conviction. The two offenses involved different victims, constituted materially different conduct, and were at least somewhat separated in time.
> Viewed from a high enough level of generality, Boyle's offenses of possessing child pornography and sexually abusing a child are undoubtedly related: both involve the sexual exploitation of children. But the Sentencing Guidelines demand a more particular comparison of the conduct at issue, and Boyle's state offense is not "relevant conduct" under either the "common scheme" or "same course of conduct" test prescribed by the Guidelines.

*Id.*

The same is true here. Here, the defendant pled guilty to Counts 13 and 15 of the Indictment. Count 13 relates to the defendant's use of MV13 to produce visual depictions of MV13 engaged in sexually explicit conduct. The offense dates are between on or about June 9, 2020 and on or about September 29, 2020. PSR ¶ 20. Count 15 relates to the defendant's possession of CSAM between on or about March 25, 2020 and on or about October 1, 2020. PSR ¶21. Separate and apart from his federal offenses, the defendant was charged and convicted of rape and sodomy in Fairfax County. These offenses pertain to two minor victims (FFX VICTIM 1 and FFX VICTIM 2) who are not charged production victims in the federal case (referred to in the PSR by their initials). PSR ¶207. As discussed above, on July 20, 2020, the

defendant forcibly raped FFX VICTIM 1 (not a named victim in the Federal Indictment). *Id.* Similarly, on July 2, 2020, the defendant forcibly sodomized FFX VICTIM 2 (also not a named victim in the Federal Indictment). *Id.* Notably, the defendant was not charged at the state level for production or possession of CSAM involving FFX VICTIM 1 or FFX VICTIM 2. The sexually explicit visual depictions of these minor victims are included among the images charged in Count 15, though they are not the only victims captured by Count 15. *Id.*

There can be no credible claim that the defendant's sexual assault of FFX VICTIM 1 and FFX VICTIM 2 is entirely relevant conduct to the defendant's sexual exploitation of an entirely different victim – MV13 – during a different timeframe. *See Nania,* 724 F.3d at 832 (finding that only where the victims of sexual abuse and child pornography overlap among the state and federal offenses is there any necessary inquiry into relevant conduct). To the extent that there is any overlap with the rape and sodomy of the two Fairfax victims and the CSAM of those victims captured by Count 15, *Wilson, Nania, Bidwell, Hardy, Ludwig, Shouse,* and *Boyle* are instructive in militating for a consecutive sentence not a concurrent one.

As a general matter, for the reasons explained in *Boyle*, the possession of the images and the abuse of the victims are distinct enough that they are not relevant conduct. However, even if the court were to find that the sexual abuse and the possession of images of the victims was relevant conduct, that is just the first prong of the necessary dual pronged inquiry. The second necessary prong is that the relevant conduct "was the basis for an increase in the offense level" for the offense of conviction. *See Nania,* 724 F.3d at 830; *see also United States v. Sheehan,* 414 Fed. Appx.19, 20-21 (9th Cir. 2011) (finding that § 5G1.3(b) did not apply even where the first prong of relevant conduct was met because the state offense was not the basis for the increase in the offense level and therefore a consecutive sentence was proper). Moreover, as the Seventh

Circuit explained in *Nania,* in order for § 5G1.3(b) to apply, all the conduct involved in the state offense must satisfy both of these prongs. *Id.* ("Because *all* the conduct from the previous 'offense' must meet subsection (b)'s requirements, the more conduct involved in the prior offense, the less likely *all* of it will qualify. Thus, the provision's applicability will shrink as the scope of the offense; grows.").

Turning to the second prong, the inquiry becomes whether the increase in the defendant's offense level for that "base conduct" was "due to actions already being punished by a state sentence" *Id.* Here, like in *Nania,* the Guidelines enhancements resulted from the particular characteristics of the federal offense. *Id.* To the extent the Court were to find that any enhancement was from the state offense then that would transform and transition this inquiry to § 5G1.3(c) because this becomes (1) a complex case, (2) a defendant facing multiple prison terms, and (3) those prison terms "call for the application of different rules." § 5G1.3(c). Under § 5G1.3(c), the court is granted a broad discretionary standard to sentence either concurrently or consecutively.

Finally, even if this Court were to find that the defendant's state convictions for sexually assaulting FFX VICTIM 1 and FFX VICTIM 2 was "related conduct" to his sexual exploitation of MV13 and possession of CSAM depicting multiple victims, this Court may still impose consecutive sentences because the guidelines are advisory. *See United States v. Wilson,* No. 23-4093, 2024 WL 1109235 (4th Cir. 2024) (affirming sentence for defendant's federal offense of solicitation of child pornography to run consecutive to state sentence for rape and explaining that "a concurrent sentence was merely advisory and did not bind the court."); *United States v. Lynn,* 912 F.3d 212 (4th Cir. 2019) (allowing consecutive sentences even though § 5G1.3(c) stated that the federal sentence "shall" run concurrently); *United States v. Brown*, 973 F.3d 667 (7th Cir.

2020) (consecutive sentence was proper even though the other sentence was for relevant conduct because guidelines are not mandatory); *United States v. Benson*, 888 F.3d 1017 (8th Cir. 2018) (§ 5G1.3(b)(2) does not prohibit the district court from exercising its statutory authority to impose a consecutive sentence); *United States v. Henry,* 1 F4th. 1315, 1326 (11th Cir. 2021) (affirming partial consecutive sentence despite relevant conduct explaining that courts must consider the advice of § 5G1.3, but are not required to impose a sentence concurrently because the guidelines are not mandatory); *United States v. Registe,* No 20-30042, 2026 WL 1347410 *1 (9th Cir. 2026) (affirming consecutive sentence where the district court properly considered the 18 U.S.C. § 3553(a) factors including the need to protect the public and the defendant's long criminal history including violent acts). As explained herein, the §3553 factors support a 40-year sentence to run consecutive from the defendant's state sentence.

**V. Supervised Release**

The Court must also determine the appropriate term of supervised release at sentencing. "Supervised release … is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). Instead, it "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Under 18 U.S.C. § 3583(k), the authorized term of supervised release for the defendant's crimes is at least five years and up to life. This five-year mandatory minimum term reflects a heightened concern for recidivism among sex offenders and the need for supervision over time. *See* H.R. Rep. No. 107–527 at 2 (2002) (explaining that "studies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes" and that "the recidivism rates do not appreciably decline as offenders age"); H.R. Conf. Rep. No. 108-66 at 49–50 (2003). Notably, the Guidelines recommend a lifetime term of supervised release for sex offenders, U.S.S.G.

§ 5D1.2(b) (Policy Statement), which courts have observed "reflects the judgment of Congress and the Sentencing Commission that a lifetime term of supervised release is appropriate for sex offenders in order to protect the public." *United States v. Morace*, 594 F.3d 340, 351 (4th Cir. 2010) (quotation marks and citation omitted).

Based on an assessment of these factors, the United States recommends that the Court impose a lifetime of supervised release with the conditions of supervision described in 18 U.S.C. § 3583(d) for felons required to register under the Sex Offender Registration and Notification Act and those described in U.S.S.G. § 5D1.3(d)(7) for sex offenders. Given the length of time the defendant has exploited minors, his age, and the seriousness of his conduct in this case, a lifetime term of supervision is appropriate to limit his capacity to reoffend and provide him with steady access to the treatment and monitoring he clearly requires.

**VI. Special Assessments Under the Justice for Victims of Trafficking Act (JVTA) & the Amy, Vicky, and Andy Child Pornography Victim Assistance Act (AVAA)**

On December 7, 2018, Congress enacted the Amy, Vicky, and Andy Child Pornography Victim Assistance Act. The Act instructs that, in addition to any restitution or other special assessment, courts "shall assess . . . not more than $50,000 on any person convicted of a child pornography production offense." 18 U.S.C. §§ 2259A(a)(3). As stated above, in this case, the maximum assessment under § 2259A(a) is $50,000. Assessments collected under this statute are deposited in the Child Pornography Victims Reserve, which provides monetary assistance to victims of trafficking in child pornography, *see* §§ 2259(d) & 2259B, and shall be paid in full after any special assessment under § 3013 and any restitution to victims of the defendant's offenses, *see* § 2259A(d)(2). In determining the amount to be assessed under § 2259A, courts should consider the sentencing factors set forth in § 3553(a) and the guidance in § 3572 for the imposition of fines. § 2259A(c). The United States respectfully requests that the Court impose a

reasonable special assessment under § 2259A, in addition to the $200 mandatory special assessment for his felony convictions pursuant to 18 U.S.C. § 3013.

Additionally, under the Justice for Victims of Trafficking Act, courts "shall assess an amount of $5,000 on any non-indigent person" convicted of certain enumerated offenses, including Chapter 110 and 117 offenses. *See* 18 U.S.C. § 3014(a). Accordingly, if the Court determines that the defendant is not indigent, the United States respectfully requests that the Court impose an assessment of $5,000, per count of conviction, for the defendant's crimes pursuant to 18 U.S.C. § 3014.

**VII. Restitution**

The government has not received any restitution requests in this case.

## CONCLUSION

The United States recommends this Court sentence the defendant to 40 years of imprisonment, to run consecutive to his state sentences, and a lifetime of supervised release.

Respectfully submitted,

Todd W. Blanche
Attorney General

Theophani K. Stamos
First Assistant United States Attorney

Date: September 17, 2026

By: /s/

Lauren Halper
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3980
Email: Lauren.Halper@usdoj.gov

AND

Alicia A. Bove
Trial Attorney
Child Exploitation and Obscenity Section
Department of Justice